IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MALCOLM COVINGTON**<br>6906 Diamond Ct.<br>District Heights, MD 20747,<br><br>    **Plaintiff,**<br><br>v.<br><br>**FMC & ASSOCIATES LLC,**<br>3927 Georgia Ave, N.W.<br>Washington, DC 20011;<br><br>    **Defendant.** | :<br>:<br>:<br>:  **Case No.:**<br>:<br>:<br>:<br>:  **Complaint**<br>:<br>:<br>:  **Jury Trial Demanded**<br>:<br>:<br>:<br>:<br>: |

## ORIGINAL COMPLAINT

Plaintiff Malcolm Covington ("Plaintiff" or "Covington"), brings this Complaint against Defendant FMC & Associates LLC ("Defendant" or "FMC") seeking all available relief under the Fair Labor Standards Act, 29 U.S.C. § 216(b) *et seq.* ("FLSA"), District of Columbia Wage Payment and Collection Law, D.C. Code, § 32-1301 *et seq.* ("WPCL"), 42 U.S.C. § 1981 ("Section 1981"), and the District of Columbia Human Rights Act D.C. Code, § 2-1401.01 *et seq.* ("HRA").

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiff's claims is proper under 28 U.S.C. § 1331. Claims that arise under state or District law are properly before the Court under 28 U.S.C. § 1367.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. The events giving rise to Plaintiff's claims occurred within this District and Defendant is domiciled in this District.

## PARTIES

3. Plaintiff Malcolm Covington ("Covington" or "Plaintiff Covington") is an adult individual residing in Maryland. Plaintiff Covington was employed by Defendant as a Lab

1

Technician in Washington, D.C. from approximately February 2015 through January 2021.

4. Defendant FMC is a D.C. limited liability company headquartered in Washington, D.C.

5. FMC describes itself as follows:

FMC & Associates, LLC (FMC) is a consulting firm specializing in Construction Materials Testing and Inspection, Structural Design, Geotechnical Testing. FMC is an authorized third party inspection agency to perform mechanical, electrical and plumbing and building field inspections of work performed pursuant to a building permit and to certify that such work complies with the District of Columbia Construction Codes. Our office is located in Washington, DC to efficiently serve our clients needs in Washington, DC Metropolitan area. We emphasize the quality of our services and do so by providing efficient and experienced project teams to our clients.

https://www.fmcassoc.com (last accessed 5/9/2022).

## FACTS

6. From approximately February 2015 through approximately January 2021, FMC employed Plaintiff Covington as a Lab Technician (and as of approximately August 2020 as a Specialty Field Inspector).

7. Plaintiff Covington served as a Lab Technician beginning in approximately February 2015. From that point until approximately late August 2016, Plaintiff Covington was paid on a non-exempt hourly basis.

8. In approximately late 2016, while still a Lab Technician, Plaintiff Covington began to be paid on a salary/overtime-exempt basis. Covington's salary ranged from approximately $40,000 per year in 2016 to approximately $57,000 per year in 2020.

9. During his time as a salaried Lab Technician, Plaintiff worked approximately 60-70 hours per week and his principal duties included testing the structural integrity of concrete cylinders to be used in construction projects.

10. Plaintiff's position did not require an advanced course or study or a college degree.

11. Plaintiff did not have a college degree.

12. Plaintiff did not have the authority to manage, hire or fire other employees and he did not give Defendant recommendations regarding the same.

13. Plaintiff did not have authority to set any policies or procedures at FMC.

14. Plaintiff was not exempt under the DCWPCL or the FLSA from an entitlement to overtime premium pay when he worked more than 40 hours in any given week.

## Discrimination in Strength Testing Lab

15. During Plaintiff's time as a salaried Lab Technician, at any given time there were 2-3 other Lab Technicians, all of whom were paid on an hourly/non-exempt basis.

16. From approximately 2015 through late 2020, factoring in turnover, there were approximately 10 Lab Technicians.

17. Plaintiff is a dark-skinned, African American (black) male, born in this country.

18. By early 2020, Plaintiff was the only African American Lab Technician at FMC. At this time, all other Lab Technicians at that time were people born in various African countries such as Sudan and Ethiopia, and all had lighter skin than Plaintiff.

19. Plaintiff was the most highly credentialed and experienced Lab Technician. In early 2017, Plaintiff obtained masonry and strength technician certification from Washington Area Council of Engineering Laboratories (WACEL), which required Plaintiff to pass a written test.

20. In late 2017, Plaintiff obtained a second masonry and strength technician certification from the American Concrete Institute (ACI).

21. During all relevant times, no other Lab Technician possessed any similar certifications.

22. During his employment at FMC, Plaintiff excelled at his job and regularly received raises.

23. Defendant's classification of Plaintiff as the only salaried/overtime-exempt Lab Technician was due to his race/color and national origin and placed him at an economic disadvantage as compared to other similarly situated Lab Technicians because others were paid hourly with an overtime premium, while Plaintiff was not. In fact, as compared to other Lab Technicians, each hour Plaintiff worked in excess of 40 per week was in effect worked for free.

24. Since approximately late 2019, Plaintiff's direct supervisor in the lab was Damtew Gebreyyohannis (nickname "Dema", Ethiopian, lighter skin).

25. Since approximately January 2020, Robel Getachew (Ethiopian, lighter skin) and Teloosa (lnu) (Ethiopian, lighter skin) each served as Lab Technicians, alongside Plaintiff Covington. From early 2020 onward, no other Lab Technicians were African-Americans.

26. Robel and Teloosa's role was to clean up concrete debris after a Lab Technician tested a concrete sample in a hydraulic press machine (used to test concrete strength), as well as to sort concrete core samples prior to testing by the Lab Technicians. Robel and Teloosa would regularly and satisfactorily perform these duties for all other Lab Technicians but not for Plaintiff Covington. The reason why Robel and Teloosa would not assist Plaintiff Covington and yet helped all other Lab Technicians was due to Plaintiff Covington's race/color/national origin.

27. This discriminatory treatment against Plaintiff Covington necessitated him working more hours than in the absence of discrimination – again, the overtime hours being worked essentially for free since no premium was paid for those hours. Indeed, Defendant set and enforced deadlines for Plaintiff Covington to produce concrete testing results, which, in the absence of assistance from Robel and Teloosa (or correction by management), caused Plaintiff Covington to

work long hours.

28. During the time period of approximately January to August 2020, Plaintiff Covington repeatedly complained to his supervisor Dema that the failure of Robel and Teloosa to assist him with the concrete samples and debris was racially motivated, but Dema willfully ignored these complaints and allowed workplace discrimination to continue. During this same time period, Plaintiff Covington also complained to FMC CEO Fadil Abdelfattah (Sudanese, lighter skin) that Robel, Teloosa and Dema failed to provide him assistance or correct the situation and that this failure was racially motivated. Abdelfattah willfully ignored Plaintiff's protected complaints, further allowing discrimination to continue unabated.

## Covington Moves to the Field

29. In approximately August 2020, Plaintiff Covington, Abdelfattah and Oscar Vasquez (Hispanic, head of Specialty Inspections) met in person in Abdelfattah's office and discussed the fact that Plaintiff could not effectively perform his job because Robel and Teloosa would not help him as they did other Lab Technicians and that the company's failure to provide him such assistance was racially motivated. The parties discussed Plaintiff moving to the Specialty Inspections department. Agreement was reached and Plaintiff was transferred to the Specialty Inspections department, but compensated on an hourly basis, at $27.41 per hour.

30. As of late August 2020, the Specialty Field Inspections department consisted of Plaintiff Covington (Inspector), Mark Goodwyn (Inspector, mixed race/light-skin), Kim Ketchoyian (Covington and Goodwyn's Direct Supervisor, Armenian, light skinned), Oscar Vasquez (Head of Specialty Inspections, Hispanic, light-skinned), and (from time to time) Brian Salmeron (Inspector, Hispanic, lighter-skinned), Christian Salmeron (Inspector, Hispanic, lighter-skinned).

31. During Plaintiff Covington's time working in Specialty Inspections, Goodwyn had regularly made inappropriate sexually suggestive jokes and displayed pornographic materials in Plaintiff's presence. Plaintiff made it known to Goodwyn that this behavior was inappropriate sexual harassment and was unwelcome.

32. At first, Plaintiff Covington was assigned approximately 40 hours of work per week. By approximately November 2020, Plaintiff Covington began to be assigned fewer work hours (approximately 15-30 hours per week), while Mark Goodwyn, Brian Salmeron (Hispanic, lighter-skinned) and Christian Salmeron (Hispanic, lighter-skinned) were assigned significantly more work hours than Plaintiff, while receiving hourly-overtime compensation. For example, during this time, Goodwyn was assigned approximately 60-70 hours of work per week, while receiving hourly-overtime.

33. Plaintiff Covington continually requested more work hours from Ketchoyian and Vasquez, but each falsely responded to Plaintiff that there was not enough work to assign to him.

**Complaints and Retaliatory Termination of Employment**

34. On or about January 3, 2021, Plaintiff Covington complained to Abdelfattah that he was being denied work hours for racially motivated reasons. Abdelfattah failed to respond or attempt correction.

35. During the first two weeks of January 2021, Plaintiff was assigned no work and was provided a schedule from Ketchoyian stating that no work hours were available.

36. On January 14, 2021, Plaintiff Covington again complained via email to Abdelfattah and Pranil Acharya (Head of Human Resources, Nepalese, lighter-skinned) about the lack of work scheduling, and stated that sexual harassment (perpetrated by Goodwyn) and racism were causes of FMC failing to assign him work when work available. Covington stated that work

was assigned to the less qualified, lighter-skinned Goodwyn, but not himself.

37. After he made this complaint, Covington did not receive any work hours from Defendant whatsoever. Eventually, Defendant failed to even communicate with Plaintiff at all.

38. As of approximately late January 2021, Plaintiff Covington's employment had been terminated by Defendant. Plaintiff's discharge was due to his race/color/national origin, as well as his protected complaints to Defendant about same and about sexual harassment committed by Goodwyn.

39. Plaintiff suffered serious emotional distress, humiliation, pain and anguish as a result of Defendant's discrimination and retaliation against him.

40. Defendant's retaliatory and discriminatory conduct was outrageous, wanton, reckless and willful.

## COUNT I
## UNPAID OVERTIME – FLSA

41. All previous paragraphs are incorporated as though fully set forth herein.

42. The FLSA requires that covered employees be compensated at a rate of not less than 150% of their regular rate of pay for all hours worked in excess of forty (40) hours per week. *See* 29 U.S.C. § 207(a)(1).

43. Defendant is subject to the wage requirements of the FLSA because Defendant is an "employer" under 29 U.S.C. § 203(d).

44. During all relevant times, Defendant was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

45. During all relevant times, Plaintiff was a covered employee entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

46. Plaintiff is not exempt from the requirements of the FLSA. Plaintiff is entitled to be paid at 150% of his regular rate for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

47. Defendant failed to comply with 29 U.S.C. § 207(a)(1) by failing to compensate Plaintiff at 150% of his regular rate for all hours worked over forty (40) in a workweek.

48. Defendant knowingly failed to compensate Plaintiff at 150% of his regular rate for all hours worked in excess of forty (40) hours per workweek, in violation of 29 U.S.C. § 207(a)(1).

49. Defendant also failed to make, keep, and preserve records with respect to Plaintiff sufficient to determine his wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(a)(5).

50. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

51. Pursuant to 29 U.S.C. § 216(b), employers such as Defendant, who fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

### COUNT II
### VIOLATION OF THE DISTRICT OF COLUMBIA CODE,
### SUBCHAPTER I. PAYMENT AND COLLECTION OF WAGES

52. All previous paragraphs are incorporated as though fully set forth herein.

53. The District of Columbia Code, Chapter 32, Subchapter I ("D.C. Wage Payment and Collection Law" or "DCWPCL") provides that an employer is obligated to pay all wages due to its employees. *See* D.C. Code § 32-1301 *et seq.*

54. At all relevant times as alleged herein, Plaintiff was employed by Defendant within the meaning of the DCWPCL § 32-1301.

55. Under the DCWPCL, "wages" is defined to include, *inter-alia*, "[o]ther remuneration promised or owed…[p]ursuant to a contract between an employer and another person or entity; or [p]ursuant to District or federal law."

56. As Plaintiff was not paid the full overtime wages owed to him pursuant to the FLSA and the D.C. Minimum Wage Act, D.C. Code § 32–1001, the amount of underpaid wages constitutes "wages" within the meaning of the DCWPCL.

57. Under DCWPCL § 32-1302, "[a]n employer shall pay all wages earned to his or her employees on regular paydays designated in advance by the employer and at least twice during each calendar month."

58. Defendant intentionally failed to pay the wages, including overtime wages, due for all work performed as set forth in the preceding paragraphs of this Complaint, in violation of DCWPCL § 32-1302.

59. Defendant is and was not permitted by state or federal law, or by an order of a court of competent jurisdiction, to withhold or divert any portion of Plaintiff's wages that concern this lawsuit.

60. Defendant did not have written authorization from Plaintiff to withhold, divert or deduct any portion of their wages that concern this lawsuit.

61. Pursuant to DCWPCL §§ 32-1303(5),(6) and 1308(a)(1)(A), employers such as Defendant, who fail to pay an employee wages in conformance with the DCWPCL shall be liable to the employee for the wages or expenses that were not paid, liquidated damages of 300%, statutory penalties, court costs and attorney's fees incurred in recovering the unpaid wages.

62. Due to Defendant's violation of the DCWPCL, Plaintiff is entitled to all unpaid overtime wages worked in each work week, liquidated damages of 300%, statutory penalties, plus attorney's fees and costs.

63. In violating the DCWPCL, Defendants acted willfully and with reckless disregard of clearly applicable DCWPCL provisions.

### COUNT III
### 42 U.S.C. § 1981
### DISCRIMINATION ON BASIS OF RACE, COLOR, NATIONAL ORIGIN

64. All previous paragraphs are incorporated as though fully set forth herein.

65. Section 1981 affords all persons within the United States an equal right to make and enforce contracts, including the modification and performance of contracts, without regard to race, color and national origin.

66. Section 1981 applies to the employment context and protects at-will employees such as Plaintiff from such discrimination.

67. Employers such as Defendant have an affirmative duty under Section 1981 to prohibit such discrimination.

68. Plaintiff is a member of several protected classes (race/national origin: African-American, color: dark skinned/black).

69. As described herein, Plaintiff was treated differently from other of Defendant's similarly-situated employees who were not African-American, or of darker skin (black). By way

of example, Plaintiff suffered the following adverse employment actions as a result of his protected status(es):

    a. Plaintiff was not provided the support from his coworkers Robel and Teloosa, which was necessary to effectively carry out his job duties in a timely manner and was provided to other similarly situated Lab Technicians.

    b. Plaintiff was classified as the only salary-exempt Lab Technician (despite the lack of any legal basis under the FLSA/DCWPCL for any exemption). Despite his greater experience and ability as compared to other similarly situated employees, Plaintiff was effectively compensated at a lower hourly rate due to not being paid on an hourly basis with overtime premium pay.

    c. After he was moved to a non-exempt hourly field employee in August 2020, Plaintiff was assigned fewer work hours than his similarly-situated counterparts, including Mark Goodwyn (mixed race/white), even though Plaintiff had superior qualifications and ability and even though ample work was available for Defendant to assign to Plaintiff.

70. Defendant's discrimination against Plaintiff on the bases of race, color and national origin were the direct and proximate cause of the adverse employment actions Plaintiff suffered.

71. As a result of this discrimination, Plaintiff suffered irreparable harm in the form of lower compensation, diminished work/career opportunities, a lack of employment and emotional distress.

## COUNT IV
## 42 U.S.C. § 1981
## RETALIATION

72. All previous paragraphs are incorporated as though fully set forth herein.

73. Section 1981 protects employees who engage in "protected activity" (i.e., complain to their employers of unlawful discrimination) from being retaliated against for the exercise of such protected activity.

74. Plaintiff engaged in protected activity in at least the following instances:

   a. Throughout late 2019 and 2020, Plaintiff had continually complained to Fadil Abdelfatah and Pranil about race/color/national origin discrimination.

   b. On January 14, 2021, plaintiff sent a "Formal Complaint" via email to Fadil Abdelfatah and Pranil, in which he complained of race/color/national origin based discrimination as to the assignment of work hours.

75. Plaintiff suffered an adverse employment action in the form of his termination within days of January 1, 2021. Shortly after sending the email Defendant refused to communicate with Plaintiff or provide him any further work hours.

76. Plaintiff's protected activity was the direct and proximate cause of the adverse employment actions Plaintiff suffered.

77. As a result of this discrimination and retaliation, Plaintiff suffered irreparable harm in the form of lower compensation, diminished work/career opportunities, a lack of employment, and emotional distress.

## COUNT V
### VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT
### DISCRIMINATION ON BASIS OF RACE, COLOR, NATIONAL ORIGIN

78. All previous paragraphs are incorporated as though fully set forth herein.

79. The DCHRA prohibits, among other things, employers from discriminating against their employees with respect to terms and conditions of employment on the basis of race, color and national origin. D.C. Code § 2–1402.11.

80. Plaintiff is a member of several protected classes (race/national origin: African-American, color: dark skinned/black).

81. As described herein, Plaintiff was treated differently from other of Defendant's similarly-situated employees who were not African-American, or of darker skin (black). By way of example, Plaintiff suffered the following adverse employment actions as a result of his protected status(es):

   a. Plaintiff was not provided the support from his coworkers Robel and Teloosa, which was necessary to effectively carry out his job duties in a timely manner.

   b. Plaintiff was classified as the only salary-exempt lab technician (despite the lack of any legal basis under the FLSA/DCWPCL for any exemption). Despite his greater experience and ability as compared to other similarly situated employees, Plaintiff was effectively compensated at a lower hourly rate due to not being paid on an hourly basis with overtime premium pay.

   c. After he was moved to a non-exempt hourly field employee in August 2020, Plaintiff was assigned fewer work hours than his similarly-situated counterparts, including Mark Goodwyn (mixed race/white), even though Plaintiff had superior

qualifications and ability and even though ample work was available for Defendant to assign to Plaintiff.

82. Defendant's discrimination against Plaintiff on the bases of race, color and national origin were the direct and proximate cause of the adverse employment actions Plaintiff suffered.

83. As a result of this discrimination, Plaintiff suffered irreparable harm in the form of lower compensation, diminished work/career opportunities, a lack of employment and emotional distress.

84. D.C. Code § § 2–1403.16 allows an employee a private right of action against their employer to remedy discrimination and retaliation.

## COUNT VI
## VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT
## RETALIATION

85. All previous paragraphs are incorporated as though fully set forth herein.

86. The DCHRA makes it illegal for a person "to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected" by the DCHRA. D.C. Code § 2–1402.61.

87. Plaintiff engaged in protected activity in at least the following instances:

   a. Throughout late 2019 and 2020, Plaintiff had continually complained to Fadil Abdelfatah and Pranil about race/color/national origin discrimination.

   b. On January 14, 2021, plaintiff sent a "Formal Complaint" via email to Fadil Abdelfatah and Pranil, in which he complained of race/color/national origin based

discrimination as to the assignment of work hours, as well as sexual harassment committed by Mark Goodwyn.

88. Plaintiff suffered an adverse employment action in the form of his termination within days of January 14, 2021. Shortly after sending the email Defendant refused to communicate with Plaintiff or provide him any further work hours.

89. Plaintiff's protected activity was the direct and proximate cause of the retaliatory adverse employment actions Plaintiff suffered.

90. As a result of this discrimination and retaliation, Plaintiff suffered irreparable harm in the form of lower compensation, diminished work/career opportunities, a lack of employment and emotional distress.

91. D.C. Code § § 2–1403.16 allows an employee a private right of action against their employer to remedy discrimination and retaliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

A. Back pay damages (including unpaid compensation for all hours worked, at applicable overtime rates) and prejudgment interest to the fullest extent permitted under the law;

B. Liquidated damages to the fullest extent permitted under the law;

C. Lost earnings, past and future, which Plaintiff has suffered as a result of Defendant's discriminatory, and retaliatory treatment, including, but not limited to, past and future wages, lost earning capacity, and other lost benefits;

D. Compensatory damages for emotional distress, humiliation, pain, anguish and other harms;

E. Punitive damages;

F. Reinstatement to Plaintiff's former position with prior hourly wage and benefits, with a non-discriminatory assignment of work hours;

G. Front pay in lieu of reinstatement;

H. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

I. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: May 23, 2022                           Respectfully Submitted,

/s/ James E. Goodley

James E. Goodley (Bar. No. PA0069)
Ryan P. McCarthy
GOODLEY MCCARTHY LLC
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 394-0941
james@gmlaborlaw.com
ryan@gmlaborlaw.com

*Attorneys for Plaintiff*