### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

MALCOLM COVINGTON,

          *Plaintiff*,

   v.

FMC & ASSOCIATES, LLC,

         *Defendant*.

Civil Action No. 1:22-cv-01441-RDM

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Malcolm Covington brings this action against his former employer, FMC & Associates, LLC ("FMC").  Covington asserts three sets of claims relating to his employment at FMC.  First, he alleges that FMC violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*, by failing to pay him legally required overtime wages.  Second, he asserts discrimination claims under 42 U.S.C. § 1981 ("Section 1981") and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*  Finally, he alleges that FMC retaliated against him in violation of 42 U.S.C. § 1918 and the DCHRA.  Before the Court is FMC's motion to dismiss the complaint for failure to state a claim.  For the reasons explained below, the Court will **DENY** FMC's motion to dismiss.

### I. BACKGROUND

#### A.  Factual Background

To resolve FMC's motion to dismiss, the Court must accept as true the following factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

FMC is a consulting firm specializing, among other things, in the testing and inspection of construction materials. Dkt. 1 at 2 (Compl. ¶ 5). FMC employed Covington, a "dark-skinned, African American (black) male" born in the United States, *id.* at 3 (Compl. ¶ 17), from 2015 to 2021, *id.* at 2 (Compl. ¶ 6). Covington does not have a college degree, *id.* at 3 (Compl. ¶ 11), although he earned two masonry and strength technician certifications in 2017, *id.* (Compl. ¶¶ 19–20). From 2015 to 2020, most of Covington's tenure at FMC, he was a lab technician. *See id.* at 2 (Compl. ¶ 6). His primary duty in that role was testing the strength of concrete cylinders that would be used in construction. *Id.* (Compl. ¶ 9). Damtew Gebreyyohannis, who is Ethiopian and has "lighter skin" than Covington, *id.* at 4 (Compl. ¶ 24), directly supervised Covington from late 2019 to August 2020, s*ee id.* at 4, 5 (Compl. ¶¶ 24, 29). Covington was the most experienced lab technician, and no other lab technicians at the relevant times held the same or similar certifications to those he possessed. *Id.* at 3 (Compl. ¶¶ 19, 21). According to the complaint, Covington "excelled at his job and regularly received raises." *Id.* at 4 (Compl. ¶ 22).

Between February 2015 and late 2016, FMC paid Covington on an hourly basis. *Id.* at 2 (Compl. ¶ 7). Then, in late 2016, the company began paying him on a salary basis. *Id.* (Compl. ¶ 8). During the period when FMC paid Covington on a salary basis, "there were 2-3 other [l]ab [t]echnicians," but he was the only one who was not paid on an hourly basis. *Id.* at 3 (Compl. ¶ 15). His "salary ranged from approximately $40,000 per year in 2016 to approximately $57,000 per year in 2020." *Id.* at 2 (Compl. ¶ 8). Covington alleges that he was underpaid compared to his colleagues during this time because he worked sixty to seventy hours per week but did not receive overtime pay, while his colleagues were paid on an hourly basis and did receive "overtime premium." *Id.* at 2, 4 (Compl. ¶¶ 9, 23). He alleges that FMC paid him a salary rather than hourly wages due to his race, color, and national origin. *Id.* at 4 (Compl. ¶ 23).

In August 2020, FMC began to pay Covington on an hourly basis again.  *Id.* at 5 (Compl. ¶ 29).  Several developments precipitated this change.  In early 2020, Robel Getachew and Teloosa Inu, who are Ethiopian and both have lighter skin than Covington, *id.* at 4 (Compl. ¶ 25); *see id.* at 3 (Compl. ¶ 18), became lab technicians, *id.* at 4 (Compl. ¶ 25).  Getachew and Teloosa's duties included cleaning up "concrete debris after a [l]ab [t]echnician tested a concrete sample in a hydraulic press machine" and "sort[ing] concrete core samples prior to testing by the [l]ab [t]echnician."  *Id.* at 4 (Compl. ¶ 26).  Although Getachew and Teloosa performed this duty for other lab technicians, according to the complaint, they refused to provide similar assistance to Covington because of his "race/color/national origin."  *Id.*  This mistreatment, in turn, interfered with Covington's ability "effectively [to] perform his job" and slowed his work to the point that he had to work longer hours to meet deadlines.  *Id.* at 4–5 (Compl. ¶¶ 27, 29).

In late 2019 and 2020, Covington "continually complained" about race, color, and national origin discrimination, *id.* at 12, 14 (Compl. ¶¶ 74, 87), to FMC CEO Fadil Abdelfattah, who is Sudanese and has "lighter skin," *id.* at 5 (Compl. ¶ 28), and Head of Human Resources Pranil Acharya, who is Nepalese and "lighter-skinned," *id.* at 6 (Compl. ¶ 36).  Covington also complained to Abdelfattah and Gebreyyohannis specifically that Getachew and Teloosa's treatment of him was racially motivated.  *Id.* at 5 (Compl. ¶ 28).

Covington alleges that Gebreyyohannis took no action in response and that Abdelfattah did not act until a meeting in August 2020, at which an agreement was reached to move Covington to the Specialty Inspections department.  *Id.* (Compl. ¶¶ 28–29).  It was at that point that FMC, once again, began to compensate Covington on an hourly basis—this time, at a rate of $27.41 per hour.  *Id.* (Compl. ¶ 29).  Neither of Covington's positions at FMC gave him the

authority to "manage, hire or fire other employees." *Id.* at 3 (Compl. ¶ 12).  Nor did he have the power to set FMC "policies or procedures." *Id.* (Compl. ¶ 13).

In the Specialty Inspections department, Covington worked alongside Mark Goodwyn, who is "mixed race" and has "light[ ]skin." *Id.* at 5 (Compl. ¶ 30).  Covington alleges that Goodwyn sexually harassed him by making regular "sexually suggestive jokes" and "display[ing] pornographic materials in [his] presence." *Id.* at 6 (Compl. ¶ 31).  Covington's direct supervisor in the department was Kim Ketchoyian, who is Armenian and "light skinned." *Id.* at 5 (Compl. ¶ 30).  The department was headed by Oscar Vasquez, who is Hispanic and "light-skinned." *Id.*

Initially, Covington worked around forty hours per week in the Specialty Inspections department. *See id.* at 6 (Compl. ¶ 32).  But around November 2020, he began receiving fewer assigned hours than his colleagues. *Id.*  Goodwyn, for example, whom Covington alleges was less qualified than he was, worked sixty to seventy hours per week and was paid for overtime, while Covington's hours dropped to about fifteen to thirty per week. *Id.* at 6–7 (Compl. ¶¶ 32, 36).  Covington "continually" requested additional hours of work from Ketchoyian and Vasquez, who in response told him that there was not enough work to assign him more. *Id.* at 6 (Compl. ¶ 33).

Covington alleges that in the first two weeks of January 2021 he was not scheduled for any work at all and was given a schedule showing that "no work hours were available." *Id.* (Compl. ¶ 35).  On January 3, 2021, Covington complained to Abdelfattah "that he was being denied work hours for racially motivated reasons." *Id.* (Compl. ¶ 34).  On January 14, 2021, without having received a response from Abdelfattah to his January 3 complaint, Covington complained to both Abdelfattah and Acharya in an email. *Id.* at 6 (Compl. ¶¶ 34, 36).  In that

4

email, he stated that he was not being assigned available work due to racism and sexual

harassment by Goodwyn.  *Id.* (Compl. ¶ 36).  Covington was not assigned any work hours at all

after this communication, and he was terminated shortly thereafter.  *Id.* at 7 (Compl. ¶¶ 37–38).

## B.    Procedural History

Covington filed this action on May 23, 2022.  His complaint includes three categories of

claims.  The first pertains to unpaid overtime wages.  Covington alleges that FMC violated the

FLSA (Count I) by "failing to compensate [him] at 150% of his regular rate for all hours worked

over forty . . . in a workweek."  *Id.* at 8 (Compl. ¶ 47).  He also alleges that FMC violated the

DCWCPL (Count II) by failing to pay him the wages he was owed under the FLSA and the

District of Columbia Minimum Wage Act ("DCMWA").  *Id.* at 9 (Compl. ¶¶ 56–58).  The

second category includes Covington's workplace discrimination claims under 42 U.S.C. § 1981

(Count III) and the DCHRA (Count V).  Covington alleges that he was treated differently than

other FMC employees in terms of his pay structure, the work hours he was allocated, and the

support he received on the job from colleagues because of his protected statuses.  *Id.* at 10–11,

13–14 (Compl. ¶¶ 65–71, 79–84).  The final category encompasses Covington's retaliation

claims, also under 42 U.S.C. § 1981 (Count IV) and the DCHRA (Count VI).  Covington alleges

that FMC reduced his work hours and eventually terminated him because he complained to his

superiors about the discriminatory treatment.  *Id.* at 12, 14–15 (Compl. ¶¶ 74–77, 86–90).  FMC

now moves to dismiss all counts for failure to state a claim.  Dkt. 12-1 at 1.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6) "tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d

235, 242 (D.C. Cir. 2002).  In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e]

note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (internal citation omitted) (quoting *Iqbal*, 556 U.S. at 675). The complaint, however, need not include "detailed factual allegations" to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), nor must the complaint demonstrate that recovery is likely, so long as the facts alleged are "enough to raise a right to relief above the speculative level," *id.*

The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged,'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). Even though "detailed factual allegations" are not required, however, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

#### A.    FLSA (Count I)

In Count I, Covington alleges that FMC did not adequately compensate him under the FLSA for the overtime hours he worked. Dkt. 1 at 7–8 (Compl. ¶¶ 41–51). In response, FMC argues that Covington was employed in a "professional capacity" and that, accordingly, he was exempt from the FLSA's overtime pay requirements. Dkt. 12-1 at 6–9. The Court is unpersuaded, as explained below.

The FLSA requires employers to compensate employees for hours worked in excess of 40 hours per week at a rate of at least 1.5 times their regular rate.  *See* 29 U.S.C. § 207(a).  FMC does not dispute that Covington has alleged the essential elements of a prima facie case:  He has alleged that (1) "the defendant employed him," (2) "the defendant is an enterprise engaged in interstate commerce covered by the FLSA or the plaintiff is otherwise covered by the FLSA," (3) he "actually worked in excess of a 40–hour work week," and (4) "the defendant failed to pay him overtime wages as required by law."  *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 58 (D.D.C. 2012) (citations omitted).  Nor does FMC contest—at least for present purposes— that the complaint adequately alleges that it "failed to make, keep, and preserve records with respect to [Covington] sufficient to determine his wages, hours, and other conditions of employment in violation of the FLSA."  Dkt. 1 at 8 (Compl. ¶ 49); *see* Dkt. 12-1 at 6–9.  Instead, FMC makes only one argument: that Covington's employment was exempt from coverage under the FLSA.  *See* Dkt. 12-1 at 6–9.

In particular, FMC maintains that Covington was exempt because he was employed in "a bona fide . . . professional capacity."  29 U.S.C. § 213(a)(1); Dkt. 12-1 at 7.  Under the governing Department of Labor regulations, an employee is "employed in a bona fide professional capacity" if his work requires "[1] knowledge of an advanced type in field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction[] or . . . [2] invention, imagination, originality or talent in a recognized field of artistic or creative endeavor."  29 C.F.R. § 541.300(a)(2)(i)–(ii); *see also Powell v. Am. Red Cross*, 518 F. Supp. 2d 24, 38 n.14 (D.D.C. 2007).

Notably, the professional capacity exemption is an "affirmative defense on which the employer has the burden of proof."  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97

(1974); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Off. of Pers. Mgmt.*, 821 F.2d 761, 771 (D.C. Cir. 1987) ("Although employees who are determined to be executive, administrative, or professional are exempt from overtime, the burden is on the employer to demonstrate the employee is in fact exempt." (citations omitted)).  As such, Covington was not required to plead facts sufficient to permit the Court to conclude, at this early stage of the proceeding, that the exemption is inapplicable.  To be sure, "an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).  But that is the rare exception, and not the rule, and, here, nothing in the complaint invites early resolution of such an inherently fact-intensive defense.

To fall within the professional capacity exemption, the employment at issue must satisfy both the salary and primary duty tests.  *See Powell*, 518 F. Supp. 2d at 38.  The former requires that the employee earn at least $684 per week.  29 C.F.R. § 541.300(a)(1).  Both parties agree that Covington has alleged as much.  *See* Dkt. 12-1 at 9, Dkt. 15 at 11.  But, as noted above, the "primary duty" test asks whether the employee's work "[r]equir[ed] knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.300(a)(2)(i).  The parties dispute whether Covington's work satisfied this second test.

FMC argues that Covington's work "testing the structural integrity of concrete cylinders to be used in construction projects," Dkt. 1 at 2 (Compl. ¶ 9), "require[ed] knowledge of an advanced type," and it argues that "the construction industry" is a "field of science or learning." Dkt. 12-1 at 9.  FMC further contends, moreover, that Covington's masonry and strength

technician certifications, Dkt. 1 at 3 (Compl. ¶¶ 19-20), satisfy the "prolonged course of specialized intellectual instruction" requirement.  *See id*.

Relying exclusively on the allegations contained in the complaint, as the Court must at this early stage of the proceedings, these arguments are unavailing.  The "learned professional" exemption, for example, excludes the "performance of routine mental, manual, mechanical or physical work," 29 C.F.R. § 541.301(b), and the complaint does not even purport to offer a detailed account of Covington's daily tasks.  The Department of Labor regulations, moreover, define "[t]he phrase 'field of science or learning'" to include:

> [T]he traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advance type.

29 C.F.R. § 541.301(c).  Here, however, even if "the construction industry" is a "field of science or learning," the Court cannot determine on the bare allegations of the complaint whether Covington's role in that industry is more akin to that of "the traditional professions" or "the mechanical arts or skilled trades."  Finally, although the complaint alleges that Covington earned two certifications related to his work at FMC, *see* Dkt. 1 at 3 (Compl. ¶¶ 19–20), "[t]he best prima facie evidence that an employee meets th[e specialized intellectual instruction] requirement is possession of the appropriate academic degree."  29 C.F.R. § 541.301(d).  The complaint says little about the certifications that Covington earned and, certainly, offers no prima facie basis to equate those certifications with "degrees" earned through "prolonged" instruction. Dkt. 1 at 3 (Compl.  ¶¶ 19–20).

"Because the complaint does not itself establish that [the plaintiff] was an exempt employee, 'dismissal at this stage [based on the exemption is] inappropriate.'"  *Jones v.*

*Changsila*, 271 F. Supp. 3d 9, 19 (D.D.C. 2017) (quoting *de Csepel v. Republic of Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013)).

**B.      District of Columbia Wage Payment and Collection Law (Count II)**

Count II of the complaint asserts a claim under the DCWPCL for failure to pay Covington overtime wages as required by the FLSA and the DCMWA.  Dkt. 1 at 8–10 (Compl. ¶¶ 52–63).  The complaint adequately alleges a claim under the DCWPCL: It alleges that Covington worked hours for which he was not compensated.  *Id.* at 8 (Compl. ¶ 47); *see Craig v. Not-for-Profit Hosp. Corp.*, 626 F. Supp. 3d 87, 108 (D.D.C. 2022) ("Because [the plaintiff] allegedly continued to work at least 32 hours per week without being properly compensated for his time, he adequately pleads a violation of the DCWPCL." (internal citation omitted)); *Akinsinde v. Not-For-Profit Hosp. Corp.*, 216 F. Supp. 3d 33, 43 (D.D.C. 2016) (holding the plaintiff established a plausible claim under the DCWPCL by alleging "she routinely was not paid for the break-time hours that she worked").  In seeking dismissal of this claim, FMC argues that the DCMWA provides the exclusive remedy for unpaid overtime wages under D.C. law. Dkt. 12-1 at 9.  But, as explained below, that argument is squarely foreclosed by clarifying amendments to the governing law.

Under D.C. law, two different statutes— the DCWPCL, D.C. Code § 32-1301 *et seq.*, and the DCMWA, D.C. Code § 32-1003 *et seq.*—combine to create the scheme relevant to this litigation.  Like the FLSA, the DCMWA sets a "minimum hourly wage," *id.* § 32-1003(a)(5), and imposes an overtime-pay requirement for "employment in excess of 40 hours" per week, *id.* § 32-1003(c).  The DCMWA's overtime rate, "1 1/2 times the regular rate," *id.*, tracks the FLSA's equivalent rate, *see* 29 U.S.C. § 207(a)(2)(C).  Although the DCMWA sets the minimum wages and overtime premium, the DCWPCL "establishes requirements for the payment of

[these] wages," *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 146 (D.D.C. 2011) (citation

omitted).  Under the DCWPCL, District employers are required to "pay all wages earned" by

"employees on regular paydays."  D.C. Code § 32-1302.  "Wages," in turn, are defined to

include "[o]vertime premium[s]" and all "[o]ther remuneration promised or owed[ ] . . .

[p]ursuant to District or federal law," *id.* § 32-1301(3), thereby incorporating the minimum wage

and the overtime pay rules contained in the DCMWA, *see id.* § 32-1003(a) & (c).

FMC incorrectly argues that Covington lacks a claim for unpaid overtime wages under

the DCWPCL because the DCMWA offers the exclusive remedy for unpaid wages under District

law.  *See* Dkt. 12-1 at 9-10.  In making this argument, FMC relies on *Driscoll v. George*

*Washington Univ.*, 938 F. Supp. 2d 19 (D.D.C. 2013).  That case held that the plaintiff could not

bring claims for unpaid wages on the same facts under both the DCMWA and the DCWPCL

because allowing the plaintiff to proceed with a DCWPCL claim would "frustrate legislative

intent" given the narrower bounds of the DCMWA compared to the DCWPCL.  *Id.* at 23.  The

DCMWA, for example, "allows employers to avoid liquidated damages if they can establish that

they acted in 'good faith' and 'had reasonable grounds' to believe they were in compliance with

the statute."  *Id.* (citing D.C. Code § 32-1012(a)).

Amendments to the DCMWA and the DCWPCL, however, have since superseded the

reasoning in *Driscoll*, explicitly permitting employee to bring claims under either or both

statutes.  As the Court explained in *Gwapadinga v. Fescum Inc.*, 636 F.Supp.3d 71 (D.D.C.

2022), the D.C. Council amended the law in 2014, and the DCMWA now reads in part: "[a] civil

action may be commenced according to, and with all the remedies provided under, [the

DCWPCL]."  D.C. Code § 32-1012(a).  The DCWPCL, likewise, references the DCMWA,

providing: "a person aggrieved by a violation of this chapter [or] the Minimum Wage [ ]

11

Act . . . may bring a civil action . . . against the employer or other person violating this chapter [or] the Minimum Wage [ ] Act."  D.C. Code § 32-1308(a)(1)(A).  As a result, "[t]here is no indication that either civil cause of action precludes the other."  *Gwapadinga*, 636 F.Supp.3d at 73.  To the contrary, both statutes make clear that the remedies are complementary.

The Court will, accordingly, deny FMC's motion to dismiss Count II.[1]

## C.   Discrimination Claims (Counts III & V)

Covington also alleges discrimination based on race, color, and national origin in Counts III and V under 42 U.S.C. § 1981 and the DCHRA, respectively, claiming that he was treated less favorably than other similarly situated FMC employees due to his protected statuses. Dkt. 1 at 10–11, 13–14 (Compl. ¶¶ 69, 81).  FMC asks the Court to dismiss Covington's claim under Section 1981 on two grounds: first, because the complaint does not adequately allege a covered contractual relationship between Covington and FMC; and, second, because Covington bases his claim on national origin, which is not a protected status under Section 1981.  Dkt. 12-1 at 10–13, 15.  FMC also argues that Covington fails to allege sufficient facts to state a claim for discrimination under both Section 1981 and the DCHRA.  *Id.* at 13–14, 16.  None of these arguments is persuasive.

### 1.   *42 U.S.C. § 1981 (Count III)*

42 U.S.C. § 1981 grants all "persons within the jurisdiction of the United States" the "same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C.

---

[1] The Court notes that the complaint alleges that FMC is liable under the DCWPCL because it violated both the DCMWA and the FLSA.  Dkt. 1 at 9 (Compl. ¶ 56).  FMC does not question whether the D.C. Council may provide a remedy for a violation of a federal statute, nor do Covington's allegations seeking to recover for an FLSA violation under the DCWPCL add meaningfully to the case, since the DCMWA parallels the FLSA.  In any event, because the question is neither squarely presented nor briefed, the Court need not address it at this time.

§ 1981(a).  "[C]laims based on color, race and/or ethnicity are actionable under Section 1981."

*Uzoukwu v. Metro. Washington Council of Governments*, 27 F. Supp. 3d 62, 66–67 (D.D.C.

2014) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976)).

As noted above, FMC challenges Covington's Section 1981 claim on three grounds.

First, it argues that there is no covered contractual relationship between it and Covington, and

thus no activity protected by Section 1981.  Dkt. 12-1 at 10–13.  That argument, however,

ignores the procedural posture of the case and the fact that the Court must accept Covington's

factual allegations as true and must draw all reasonable inferences in his favor.  *See Sparrow*,

216 F.3d at 1113.  The Court concludes that the complaint clears the modest hurdle that applies

at this stage of the proceeding.  It alleges that Covington was employed by FMC "as a Lab

Technician in Washington, D.C. from approximately February 2015 through January 2021," Dkt.

1 at 1–2 (Compl. ¶ 3), that at times he was a salaried employee and at other times he was an

hourly employee, *id.* at 2 (Compl. ¶¶ 7-8), that he had various "supervisor[s]" over the course of

his employment, *id.* at 4, 5 (Compl. ¶¶ 25, 30), that he was given specific tasks and duties to

perform and deadlines for doing so, *id.* at 4 (Compl. ¶ 27), and that an "[a]greement was

reached" to transfer him "to the Specialty Inspection department" at a set hourly wage, *id.* at 5

(Compl. ¶ 29).  Those allegations are more than sufficient to allege the existence of a contractual

employment relationship.

Nor do the cases that FMC cites support a different conclusion.  In *Danco, Inc. v. Wal-*

*Mart Stores, Inc.*, 178 F.3d 8 (1st Cir. 1999), the First Circuit held that an individual who was

not in privity with the defendant (but rather owned an entity that had itself contracted with the

defendant) could not state a claim under Section 1981, while in *Doe #1 v. Am. Fed'n of Gov't*

*Emps.*, 554 F. Supp. 3d 75 (D.D.C. 2021), the Court concluded that plaintiffs could not state a

Section 1981 claim because they were never directly employed by the defendant, even though they were employed by or owned businesses that contracted with the defendant. 554 F. Supp. 3d at 108–09. Neither case dealt with a long-term employee who was allegedly subjected to discrimination in the terms and conditions of his employment.

The more relevant case law, moreover, supports Covington's theory of relief. Most notably, this Court has recognized that D.C. law "views at-will employment as a species of contract." *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 32 (D.D.C. 1999) (citations omitted).[2] That Covington's employment with FMC was at-will, *see* Dkt. 1 at 10 (Compl. ¶ 66), accordingly, does not undercut his ability to recover under Section 1981. Moreover, "[c]ourts in this District consistently have held that a formal or term-specific employment contract is not required to assert a claim under section 1981." *Moore v. D.C. Water & Sewer Auth.*, No. 18-CV-00657, 2018 WL 5983387, at *3 (D.D.C. Nov. 14, 2018) (citations omitted). In the words of another decision from this Court, Section 1981 "was intended to 'provid[e] a vehicle for every employee to remedy racial discrimination in the workplace,'" *Bowyer v. District of Columbia*, 910 F. Supp. 2d 173, 208 (D.D.C. 2012) (alteration in original) (quoting *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 263 (2d Cir. 2000)), and that remedy cannot be short circuited through the mere expedient of at-will employment.

FMC also argues that Covington's Section 1981 claim fails because it alleges discrimination on the basis of national origin. Dkt. 12-1 at 15. Although it is true that a discrimination claim under Section 1981 cannot be sustained on the basis of national origin alone, *see Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 606 (1987), the racial discrimination

---

[2] In the complaint, Covington alleges that the "events giving rise to [his] claims occurred within this District." Dkt. 1 at 2 (Compl. ¶ 2).

the statute is understood to protect against "includes intentional discrimination based on 'ancestry or ethnic characteristics,'" *Kidane v. Nw. Airlines, Inc.*, 41 F. Supp. 2d 12, 17 (D.D.C. 1999) (quoting *Saint Francis Coll.*, 481 U.S. at 613).  In other words, "[n]ational origin discrimination is cognizable under § 1981 only if based on racial or ethnic characteristics associated with the national origin in question." *Wesley v. Howard Univ.*, 3 F. Supp. 2d 1, 3 (D.D.C. 1998) (quoting *Saint Francis Coll.*, 481 U.S. at 613).  Covington clears this hurdle by alleging that he was subjected to discrimination on the basis of his race and skin color, and he contrasts himself with "lighter-skinned" employees from Nepal, Sudan, and Ethiopia.  *See* Dkt. 1 at 4-5, 6-7 (Compl. ¶¶ 25-28, 32-36).  Those allegations are sufficient to survive FMC's motion to dismiss.

Finally, FMC argues that Covington has not alleged a plausible entitlement to relief because he fails to offer more than "conclusory statements that actions were taken in connection with his employment based on his race, color and national origin" or that "suggest a racially discriminatory motive for any actions taken by FMC in connection with [his] employment." Dkt. 12-1 at 14.  The Court disagrees.  "[C]ourts can explore a plaintiff's prima facie case at the dismissal stage to determine whether the plaintiff can ever meet [his] initial burden to establish a prima facie case," but plaintiffs are not required to establish a prima facie case of discrimination to survive a motion to dismiss.  *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 90 n.6 (D.D.C. 2010) (citations and internal quotation marks omitted), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011); *see also Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) ("[A]t the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case." (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008))).

15

In any event, Covington has alleged a prima facie case of discrimination.  To allege a prima facie case, a plaintiff must allege "that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class)."  *Brown*, 774 F.3d at 1022 (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002)).  "A plaintiff can raise an inference of discrimination by showing 'that []he was treated differently from similarly situated employees who are not part of the protected class.'"  *Id.* (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)).  Here, Covington alleges that he was treated less favorably than other FMC employees with lighter skin, who were less skilled or highly trained than he was.  He alleges, for example, that he was the only lab technician who possessed certifications like the certification that he received from the Council of Engineering Laboratories and the American Concrete Institute and that he "excelled at his job."  Dkt. 1 at 3-4 (Compl. ¶¶ 19-22).  He also alleges that Getachew and Teloosa, both of whom have lighter skin than Covington, did not assist him as their positions required them to do, but did help other lab technicians who also have lighter skin; that he was the only lab technician paid on a salary basis and subsequently denied overtime pay; and that he was assigned fewer work hours than colleagues who have lighter skin and at least one colleague who was less qualified.  Dkt. 1 at 4, 5, 6, 10–11 (Compl. ¶¶ 25–26, 30, 32, 69).  These allegations suffice at the motion-to-dismiss stage.  *See Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017) (finding that "Nanko alleg[ing] that Alcoa, aware of Diané's race, treated the company he owns and operates less favorably than similarly situated white-owned companies" was enough to state a claim under Section 1981).

2. *District of Columbia Human Rights Act (Count V)*

The same principles resolve Covington's discrimination claim under the DCHRA.  The DCHRA prohibits employers from discriminating against employees because of "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression" and other characteristics.  D.C. Code § 2-1402.11(a).  DCHRA claims and analogous claims brought under Section 1981 are analyzed in a similar manner.  *See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 3 (D.C. Cir. 2010) (citations omitted) (analyzing claims under both Section 1981 and the DCHRA using the framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (holding that a plaintiff need not "prove" a prima facie case of discrimination at the motion-to-dismiss stage but simply "allege that [ ]he (1) suffered an adverse employment action (2) because of [his] membership in a protected category" (citations omitted)).  As explained above, Covington's Section 1981 claim survives FMC's motion to dismiss, and his DCHRA claim survives for the same reasons.

The Court will, accordingly, deny FMC's motion to dismiss Counts III and V.

**D.     Retaliation (Counts IV & VI)**

Counts IV and VI allege that FMC retaliated against Covington in violation of Section 1981 and the DCHRA, respectively, after he engaged in protected activity.  Dkt. 1 at 12, 14–15 (Compl. ¶¶ 72–77, 85–91).  FMC moves to dismiss both Counts.  The Court is, once again, unpersuaded.

1. *42 U.S.C. § 1981 (Count IV)*

Section 1981 encompasses retaliation claims.  *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446 (2008).  The elements of such claims are "(1) that an employee engaged in statutorily

protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (citing *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)).  Covington alleges sufficient facts to "raise [his] right to relief above the speculative level" within the framework used to analyze retaliation claims.  *See Twombly*, 550 U.S. at 555.

First, "'[t]o qualify as protected activity under [Section] 1981,' a plaintiff's actions must oppose 'a practice that the employee reasonably and in good faith believed was unlawful under § 1981.'" *Yazzie v. Nat'l Org. for Women*, No. CV 19-3845, 2021 WL 1209347, at *15 (D.D.C. Mar. 30, 2021) (quoting *Uzoukwu*, 27 F. Supp. 3d at 70).  FMC argues that complaining of discrimination on the basis of national origin alone is not a protected activity.  Dkt. 12-1 at 15–16.  But, as explained above, that is not all that Covington does—he also alleges that he was discriminated against because of his race and color and that he complained of as much to FMC management on numerous occasions.  Dkt. 1 at 5, 6 (Compl. ¶¶ 28, 34, 36).  Between January and August 2020, Covington "repeatedly complained to his supervisor [Gebreyyohannis] that the failure of Robel and Teloosa to assist him with the concrete samples and debris was racially motivated" and "also complained to FMC CEO Fadil Abdelfattah . . . that Robel, Teloosa and [Gebreyyohannis] failed to provide him assistance or correct the situation and that this failure was racially motivated."  *Id.* at 5 (Compl. ¶ 28).  He also lodged two complaints in January 2021, including one over email, about being assigned fewer work hours than colleagues, citing racism and sexual harassment as the causes.  *Id.* at 6–7 (Compl. ¶¶ 34, 36).  These complaints constitute protected activity.  *Tsehaye v. William C. Smith & Co., Inc.*, 402 F. Supp. 2d 185, 197 (D.D.C. 2005) (plaintiff's discrimination complaint to superiors "suffices as protected activity: the law

does not require a formal EEOC or court filing" (citations omitted)), *aff'd*, 204 F. App'x 901 (D.C. Cir. 2006).

Covington also adequately alleges that he suffered "materially adverse action[s]." Adverse actions are material when they "would dissuade a reasonable employee from engaging in protected activity." *Yazzie*, 2021 WL 1209347, at \*14 (citing *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 & n.4 (D.C. Cir. 2008)). To be sure, retaliation claims are not a vehicle to "micromanage supervisor decisions or sanction trivial harms," *id.* at \*15 (quoting *Swann v. Off. of Architect of Capitol*, 73 F. Supp. 3d 20, 27 (D.D.C. 2014)), but, again, more is at issue here. FMC suggests that the only retaliatory action Covington alleges is his transfer to the Specialty Inspection department. Dkt. 17 at 5. But that is plainly incorrect. After raising numerous complaints with superiors, Covington was not only transferred to a different department but was also assigned a dwindling number of work hours and eventually terminated. Dkt. 1 at 12 (Compl. ¶ 75). Termination is "obviously" a materially adverse action. *Harris v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 30, 34 (D.D.C. 2013) (citation omitted), *rev'd on other grounds*, 791 F.3d 65 (D.C. Cir. 2015). FMC's reduction of Covington's work hours is also materially adverse. *See Than v. Radio Free Asia*, 496 F. Supp. 2d 38, 49 (D.D.C. 2007) ("[A] reasonable employee would consider [ ] a reduction in work hours (and the resulting reduction in pay) . . . to be materially adverse." (citation omitted)).

Covington has also plausibly alleged causation. At this stage of the proceeding, it is enough to allege that "the employer had knowledge of the employee's protected activity, and . . . the adverse personnel action took place shortly after that activity." *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (alteration in original) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)). Here, the complaint alleges that FMC management was aware of

19

Covington's protected activity, *see* Dkt. 1 at 12 (Compl. ¶ 74), and that the alleged retaliatory actions occurred shortly after he did so:  Covington allegedly complained of racial discrimination on or about January 3, 2021.  *Id.* at 6 (Compl. ¶ 34).  Over the next two weeks, his assigned work hours were reduced to zero, *id.* (Compl. ¶ 35), and that same month, FMC terminated Covington's employment, *id.* at 7 (Compl. ¶ 38).  This alleged sequence of events falls well within the timeframe courts have treated as sufficient to support a plausible inference of causation.  *See, e.g., McIntyre v. Peters*, 460 F. Supp. 2d 125, 133 (D.D.C. 2006) (noting, as a general matter, that "[t]his Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone" (citations omitted)); *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012) (finding two months was sufficient, but emphasizing that fact-specific nature of the inquiry); *Goos v. Nat'l Ass'n of Realtors*, 715 F. Supp. 2, 4 (D.D.C. 1989) (holding five weeks was sufficient).

      2.   *District of Columbia Human Rights Act (Count VI)*

Once again, what is true of Covington's federal claim is equally true of his claim under D.C. law.  The DCHRA proscribes "retaliat[ion] against . . . any person . . . on account of having exercised or enjoyed . . . any right granted or protected under this chapter."  D.C. Code § 2-1402.61(a).  The required elements for claims of retaliation under the DCHRA closely track those under Section 1981.  A plaintiff "must show that (1) [ ]he was engaged in a protected activity or that [ ]he opposed practices made unlawful by the DCHRA, (2) the employer took an adverse action against [him], and (3) a causal connection existed between [his] opposition or protected activity and the adverse action taken against [him]."  *Fragola v. Kenific Grp., Inc.*, No. CV 21-1423, 2022 WL 1908824, at *8 (D.D.C. June 3, 2022) (quoting *Propp v. Counterpart*

*Int'l*, 39 A.3d 856, 863 (D.C. 2012)).  FMC here argues Covington fails to establish a "causal link."  Dkt. 12-1 at 18.  That argument fails for the reasons given above.

Finally, the Court is unpersuaded by FMC's contention that Covington's retaliation claim fails as a matter of law because his hours had been reduced even before he complained of discrimination.  That is a merits argument, which FMC is free to raise at a later time.  For present purposes, it is sufficient that Covington alleges that his hours were further reduced, and he was terminated, after he complained.  Whether those action were the product of retaliation or merely a continuation of downward spiral that had already began is a question for another day.

The Court will, accordingly, deny FMC's motion to dismiss Counts IV and VI.

## CONCLUSION

For these reasons, it is **ORDERED** that FMC's motion to dismiss, Dkt. 12, is **DENIED**.

**SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge

Date:  August 10, 2023